COPY

**UNITED STATES OF AMERICA** )
)
**vs.** ) **Docket No.** **92-CR-128-001**
) **Information**
**Steven Cullen** )

## PRESENTENCE REPORT

Prepared for: The Honorable Con. G. Cholakis — Sentencing Date: 7/8/92
U.S. District Judge

Prepared by: Timothy S. Murphy — Office Location: Albany, NY
U.S. Probation Officer
(518) 472-2800

Offense: Count I - Conspiracy to Possess with Intent to Distribute and Distribution of Cocaine 21:841(a)(1) & 846

Date of Arrest: 1/6/92 (Warrensburg N.Y.)
Custodial Status: 1/7/92 - Released $10,000 Appearance Bond with Pretrial Services Supervision

Identifying Data

Date of Birth: 5/4/59 — Age: 33 — Citizenship: U.S.
Warren Co. N.Y.
Race: White — Sex: Male — Dependents: 1

FBI No.: — SSN: 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 — Other ID No.: NYSID: 4315439J

Education: 11th Grade — U.S. Marshal No.: 04369-052




Legal Address: Box 212
East Schroon River Rd.
Diamond Point, NY 12834
(518) 623-2197

Detainers: None

Codefendants: See Page 1

Assistant U.S. Attorney
Paul Silver
U.S. Courthouse
445 Broadway
Albany, NY 12207
TEL: (518) 472-5522

Defense Counsel
James L. LaPann Esq. (Appointed)
107 Bay Street
Glens Falls, NY 12801
(518) 792-5634

Date Report Prepared:
Date Report Revised:

Mandatory Minimum ☐

## PART A. THE OFFENSE

### Charge and Convictions

1. The defendant is before the Court having entered a plea to a one-count Information on April 29, 1992, that states; that in or about November and December 1991, in this district, the defendant and others did knowingly, conspire and agree with each other to knowingly and unlawfully Possess with the Intent to Distribute and to Distribute Cocaine.

2. Since this offense took place after November 1, 1987, the Sentencing Reform Act of 1984 is applicable.

3. There is a written plea agreement in this case.

### Related Cases

4. Richard Oehler - Indicted Federal Court, Northern District of New York. Violation 21:841(a)(1) and 846.

5. Karen Cullen - Plea to 92-CR-127, Violation 21:841, Aiding & Abetting Drug Distribution. Sentenced 7/8/92.

6. Denise Rounds - Indicted Federal Court, Northern District of New York. Violation 21:841(a)(1) and 846.

### The Offense Conduct

7. The above is the result of a combined effort of the Warren County Sheriff's Department and the Drug Enforcement Administration (DEA) targeting the cocaine distribution of this defendant and one Richard Oehler. In late November 1991, the Warren County Sheriff's Department requested the assistance of the DEA after a Sheriff's Department confidential informant provided information that the defendant was a cocaine dealer.

8. On November 13, 1991, the confidential informant was provided $1,000 of DEA funds and surveilled to the residence of the defendant, who instructed the confidential informant to join him at Rick Oehler's home where he had a half-ounce of cocaine awaiting purchase. Once the pair arrived at Oehler's, the defendant entered the residence with the $1,000. Within a short time, the defendant and Oehler exited the house, looked under the hood of a pick-up truck and, when the defendant returned to the confidential informant, he handed the confidential informant a half-ounce of cocaine. The defendant stated that he did a line of cocaine while in the house.

9. On November 19, 1991, the confidential informant was provided $1,200 in official funds for the purchase of cocaine. After the confidential informant placed a telephone call to the defendant's residence, he was informed by Mrs. Cullen that her husband was at Rick Oehler's house.

10. The defendant returned the call and instructed the confidential informant to pick him up at his cousin's house, Kenny Oehler. The confidential informant did as instructed and the pair went to Rick Oehler's. The defendant was surveilled entering the residence and within fifteen minutes he exited with a half-ounce of cocaine and $400 in change. The confidential informant and the defendant then returned to Oehler's house and the confidential informant departed.

11. On November 25, 1991, a member of the DEA, in an undercover capacity, met with the confidential informant and the defendant at the defendant's residence in an attempt to purchase cocaine. After a period of time of discussion and the defendant hesitating to introduce the agent to Oehler, the defendant finally agreed to take the agent to Oehler's to purchase cocaine. After arrival at Oehler's, the defendant took the $1,500 DEA funds into Oehler's and returned in a short time with cocaine. The pair then departed Oehler's property and returned to Cullen's home. Enroute, the defendant offered to the agent another source of ounce amounts of cocaine.

12. On December 2, 1991, the confidential informant and agent again arranged for a $1,500 purchase of cocaine from the defendant. The trio met at the defendant's home and proceeded to Oehler's residence. The defendant took the $1,500 into Oehler's home and returned in a short time with cocaine. He informed the agent that next purchase could be two ounces for $2,000, and that the quality would be better.

13. On December 18, 1991, the agent went to the defendant's residence to purchase cocaine. He was introduced to the defendant's wife and son (age 13). The defendant informed the agent that he could not get in contact with "his guy" but would try again. After a short time, the agent was invited into the defendant's "office", a small bedroom, where the defendant discussed price and quality of the next sale. The defendant offered to "base" the cocaine if the agent desired and pointed to scales which they had to bring to his "man's" house. The pair agreed to meet at 8:00 p.m.

14. At 8:30 p.m., the agent arrived at the defendant's home and observed his wife and child outside a vehicle. The defendant instructed the agent that his wife and child would follow in his vehicle up until arrival at Oehler's home. Mrs. Cullen would take the scales. The agent proceeded to Oehler's where the defendant exited and jointed his wife. The two vehicles then parked and the defendant entered Oehler's home. The agent then observed another vehicle pull into the Oehler's driveway. Within a short time, the defendant met the agent and provided him the cocaine he purchased for $1,400.

15. On January 6, 1992, the agent met with the defendant at his residence for the purpose of purchasing cocaine from Oehler for $2,400. As arranged, the defendant and agent proceeded for a short time followed by Mrs. Cullen and her son, transporting scales. After parking, the agent observed the defendant park in Oehler's driveway.

16. After a short time, the defendant and family left Oehler's and the defendant met with the agent and informed the agent that he could only purchase one ounce because his sources' wife had gotten rid of the other ounce. The defendant then returned $1,200.

17. After departing the area, the agent arrived at a pre-arranged location and informed other agents of the above purchase. At about 5:15 p.m., agents arrested the defendant, his wife and Richard Oehler at a Texaco Service Station, Rt.9, Warrensburg, N.Y.

18. Immediately following, a search warrant was executed at the Cullen's residence. Seized from the defendant was an amount of cocaine and seized from the home were marijuana seeds and residue; Inositol, (a cutting agent), a set of triple beam scales, and hundreds of clear plastic baggies were seized from the Cullen auto.

19. The gross cocaine amounts in this conspiracy are as follows:

| | | |
|---|---|---|
| 11/13 | - | 43.8g |
| 11/19 | - | 42.9g |
| 11/25 | - | 59.5g |
| 12/2 | - | 58.9g |
| 12/18 | - | 52.4g |
| 1/6 | - | 33.6g |
| 1/6 | - | 28.2g |
| Total | | 319.3g |

Net weight was not available from the DEA lab at the time of this report.

<u>Adjustment for Obstruction of Justice</u>

20. There is no indication that an obstruction of justice has taken place in this case.

<u>Adjustment for Acceptance of Responsibility</u>

21. The defendant was interviewed by the U.S. Probation Officer in the presence of his wife. He stated that he met codefendant Oehler and his girlfriend, Denise Rounds, in October of 1991 when he began maintenance and repair work on Oehler's truck. In a short time, the defendant states that he became familiar with Oehler's cocaine distribution in the Warrensburg and Lake George region and was present for many of Oehler's transactions with unknown persons.

22. In an effort to earn money, the defendant recalls that he made an offer to Oehler to find new customers who would be interested in purchasing cocaine. When the defendant secured customers, the arrangement was to have him (the defendant) bring cash to Oehler's home and take the cocaine to the customer. For his efforts, Oehler was paid $25.00 to $50.00 or some "personal use" amounts of cocaine.

23. Through his contact with a friend (confidential informant), he was introduced to the undercover agent who began a series of cocaine purchases.

24. On each of the purchase dates, the defendant maintained a very similar pattern of delivery; meeting with the agent, informing Oehler of the amount of cocaine needed, taking the cash to Oehler and taking the cocaine to the agent.

25. The defendant states that his wife's involvement consisted of knowledge of his activity and the transportation of drug scales belonging to Oehler on two occasions. He states that he kept the scales at his home at Oehler's request would bring them to Oehler's when he needed them.

26. The defendant stated that he was present at the Oehler residence on many occasions when people would arrive to purchase cocaine. Both he and his wife were present, as was his eleven-year old son who would recreate with Denise Rounds' children. The defendant states that his son had no knowledge of his cocaine dealing until all were arrested and the child was present.

27. The defendant admits and accepts all facts in this case. He states that his desire to earn money resulted in the loss of the reputation and respect of family and friends. He feels ashamed for what he has done, but is prepared to accept the punishment the Court decides is appropriate.

<u>Offense Level Computation</u>

28. Base Offense Level: A violation of 21:841(a)(1) has a corresponding Guideline 2D1.1, <u>Unlawful Manufacturing, Importing, Exporting or Trafficking in Drugs</u>. The Government has established that the defendant was responsible for the distribution of 160 grams of cocaine, which is " at least 100 grams, but less then 200 grams of cocaine", a level 18 offense. <u>18</u>

29. Specific Offense Characteristics: None <u>0</u>

30. Adjustment for Role in the Offense: None <u>0</u>

31. Victim Related Adjustment: None <u>0</u>

32. Adjustment for Obstruction of Justice: None <u>0</u>

33. Adjustment for Acceptance of Responsibility: The defendant has expressed the necessary acceptance to warrant a two-level reduction, pursuant to 3E1.1. - <u>2</u>

34. Total Offense Level: <u>16</u>

**PART B. THE DEFENDANT'S CRIMINAL HISTORY**

**Juvenile Adjudications**

35. None.

**Criminal Convictions**

36. None.

**Criminal History Computation**

37. With a lack of a criminal history, the defendant is placed in Criminal History Category I.

**Other Criminal Conduct**

38. None.

**Pending Charges**

39. None.

**PART C. SENTENCING OPTIONS**

**Custody**

40. Statutory Provisions: The maximum penalty for this violation of 21:841(b)1(C) is 20 years.

41. Guideline Provisions: With a Total Offense level of 16, and a Criminal History score of 0, the defendant's range is 21 to 27 months.

**Supervised Release**

42. Statutory Provisions: Pursuant to offense statute, a term of at least three (3) years is mandated and, pursuant to 18:3583, the term shall not exceed three (3) years for a Class C Felony.

43. Guideline Provisions: Pursuant to 5D1.2, the term shall conform to Statute and shall be 3 years.

**Probation**

44. Statutory Provisions: Pursuant to 18:3561, a term is allowed, if the defendant is not sentenced to a term of custody at the same time. The term shall be not less then (1) or more then (5) years.

45. Guideline Provisions: A term is not allowed as the defendant's minimum custody range exceeds (6) months pursuant to 5B1.1(a).

**PART D. OFFENDER CHARACTERISTICS**

**Family Ties, Family Responsibilities, Community Ties**

46. The defendant is the son of James and Mary Cullen of East Schroon River Road, Diamond Point, N.Y. Mr. Cullen, age 53, is disabled with Multiple Sclerosis (MS) for the last six years. Prior to his disability, he was employed in a plumbing fixture manufacturing company. Mrs. Cullen, age 55, is hearing impaired and resides with Mr. Cullen. The couple receive S.S.I. as income.

47. The defendant has a brother, James Jr., age 31, who also resides at the family property. He is unemployed. The defendant married Karen Gilbo, age 34, on February 3, 1979. The couple have one child, Steven Jr., age 11, who is a fifth-grade student at Warrensburg Central Schools.

48. The defendant is a lifelong resident of Warren County, aside from a four-year military assignment. The Pretrial U.S. Probation Officer reports the home to be in an economically depressed area of Warrensburg, in need of repair and improvements.

**Mental Health and Emotional Health**

49. As the result of this offense, the defendant states he has been very nervous and anxious and has developed irregular sleeping patterns. As a result, he entered outpatient treatment at the Warrenburg Outpatient Health Center. He was prescribed Doxepin, an anti-anxiety medication, by Dr. Smead of the clinic, on a "as needed" basis to assist in sleeping. The defendant states that he does not require the medication nightly.

50. The defendant did appear very anxious at his presentence report interview, most concerned about his sentence and type of custody he may serve. The defendant does believe that, once this issue is settled, he will return to a normal pattern of emotions.

**Physical Characteristics, Including Drug Dependency and Alcohol Abuse**

51. The defendant is 5′ 9" in height, weighs 198 pounds, has brown hair and blue eyes.

52. Aside from the above, he states that he is in good health. About three years ago, he broke his left foot in a jump from a fifteen foot roof and occasionally, the foot causes him discomfort.

53. The defendant states that he began using cocaine when he met Oehler in October 1991. He states that he used "lines" of cocaine on very rare occasions and last used prior to his arrest. The defendant also used marijuana while in high school, but denies use since that period.

54. The defendant consumes alcohol (beer) on a fairly regular basis. He states that he drinks about twelve beers per week. In 1978 and 1982, he was arrested and convicted of D.W.A.I. He states that he chose to surrender his license and pay fines in lieu of attendance at a Drinking and Driving Education Program. The defendant states that the arrests proved a valuable lesson, and that he does not now drive after drinking. The defendant does not feel drinking is a problem in his life.

Education and Vocational Skills

55. The defendant completed the eleventh grade at Warrensburg High School before dropping out of school to join the military. He attained his G.E.D. while a U.S. Marine, at Camp Lajuene, North Carolina. The defendant has not pursued any further education since that time.

56. The defendant entered the U.S. Marine Corp. in December 1977. He served at Camp Pendleton, California, and Camp Lejuene, North Carolina. While on leave in 1970, the defendant states that he was involved in an auto accident, under medical care for three months, and decided not to return to his assignment. The defendant states he was declared A.W.O.L. and, after he was found, he returned to the Marines and negotiated a G.O.S. (Good of Service) discharge in December 1981.

Employment Record

57. The defendant is currently unemployed. He states that within a short time, early June, he should be employed as a maintenance person with the Evergreen Campground, Warrensburg, N.Y. Prior employment includes eight years with R.T. Jones Lumber Company, which was purchased by Euro-American Forest Products, who closed the company in October 1991.

PART E. FINES AND RESTITUTION

58. Statutory Provisions: The maximum fine, pursuant to 21:841(b)(1)(C) is $1,000,000.

59. Guideline Provisions: With an Offense Level of 16, the fine range, pursuant to 5E1.2(c)(3),the Fine Table, and (c)(4), is $5,000 to $1,000,000.

60. Restitution: None.

61. Special Assessment: $50.00.(5E1.3) and 18:3013.

62. Subject to the defendant's ability to pay, the Court shall impose an additional fine amount that is at least sufficient to cover the cost to the Government of any imprisonment, probation or supervised release (5E1.2(i)). The most recent advisory from the Administrative Office of the U.S. Courts suggests a monthly cost of $1,492 be used for imprisonment, a monthly cost of $115.30 for supervision and a monthly cost of $991 for a halfway house.

**<u>Defendant's Ability to Pay</u>**

63. The defendant and his wife have a monthly salary of $1,048. From that net amount, gained from Mrs. Cullen's $4.50 per hour position and the defendant's unemployment, the couple support a child and maintain a household with expenses that exceed income. The defendant has no assets of value, and has credit debt of $4,800. As such, it does not appear that a fine would be appropriate in this case as it would unduly burden the family unit. 5E1.2(f)(2).

**PART F. FACTORS THAT MAY WARRANT DEPARTURE**

64. The defendant has entered into an agreement with the Government that includes the defendant's commitment to assist in providing cooperation in related governmental prosecutions. If such cooperation is rendered, the Government has agreed to offer to the Court a notice of said cooperation, and this may be a factor that the Court may wish to consider in granting a Downward Departure under 5K1.1, <u>Substantial Assistance to Authorities.</u>

**PART G. IMPACT OF PLEA AGREEMENT**

65. The defendant and the Government have entered into a Written Plea Agreement that includes an agreed amount of cocaine attributed to the defendant,(160 grams), preliminary guideline calculations, and a notice that is based on the defendant's cooperation in related matters, the Government has reserved the right to offer a 5K1.1 Motion for **Downward Departure.**

66. The impact of such is that the Court, if it accepts the plea agreement, is free to sentence the defendant below the guideline imprisonment range of 21 to 27 months.

Respectfully submitted,

**FRANK T. WATERSON**
Chief U.S. Probation Officer

Timothy S. Murphy
U.S. Probation Officer

Reviewed by: Alan J. Cunningham
Senior U.S. Probation Officer.

TSM/dml